## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| CENTRAL STATES, SOUTHEAST | ) | |
| AND SOUTHWEST AREAS HEALTH | ) | |
| AND WELFARE FUND, and | ) | |
| HOWARD MCDOUGALL, Trustee, | ) | |
| | ) | No.    08 CV 2476 |
| Plaintiffs, | ) | JUDGE CASTILLO |
| | ) | MAGISTRATE JUDGE KEYS |
| v. | ) | |
| | ) | |
| JANE HILL JOHNSON and | ) | |
| SHARON ROBINSON HORNE, | ) | |
| | ) | |
| Defendants. | ) | |

## ANSWER OF DEFENDANT SHARON ROBINSON HORNE
## TO COMPLAINT FOR INTERPLEADER

Defendant SHARON ROBINSON HORNE, hereinafter "Defendant HORNE," by her attorneys, TEWS, THEISEN & THEISEN, for her Answer to the Complaint for Interpleader, state as follows:

### JURISDICTION AND VENUE

1.    This is an interpleader under Rule 22(1) of the Federal Rules of Civil Procedure to determine which of two individuals is entitled to a $40,000.00 accidental death benefit.

### ANSWER:

Defendant HORNE admits this allegation.

2.    This action arises under section 502(a)(3) of the Employee Retirement Income Security Act of 1974 ("ERISA") *as amended* by the Multiemployer Pension Plan Amendments Act of 1980, 29 U.S.C. § 1132(a)(3).  This Court has jurisdiction over this action under section 502(e) of ERISA, 29 U.S.C. § 1132(e).

1

**ANSWER:**

Defendant HORNE admits this allegation.

3.      Venue lies in this Court under section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2), in that the Central States, Southeast and Southwest Areas Health and Welfare Fund is administered at its principal place of business in Rosemont, Illinois.

**ANSWER:**

Defendant HORNE admits this allegation.

**PARTIES**

4.      Plaintiff Central States, Southeast and Southwest Areas Health and Welfare Fund (the "Fund") is an "employee welfare benefit plan" as that term is defined in section 3(1) of ERISA, 29 U.S.C. § 1002(1).

**ANSWER:**

Defendant HORNE admits this allegation.

5.      Plaintiff Howard McDougall is a trustee of the Fund and he and his fellow trustees are fiduciaries of the Fund within the meaning of section 3(21) of ERISA, 29 U.S.C. § 1002(21). The Trustees administer the Fund at 9377 West Higgins Road, Rosemont, Illinois.

**ANSWER:**

Defendant HORNE admits these allegations.

6.      Pursuant to section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), the Trustees, by and through their designated trustee Howard McDougall, are authorized to bring this action on behalf of the Fund for the purpose of enforcing the terms of the Health and Welfare Plan (the "Plan").

**ANSWER:**

Defendant HORNE admits this allegation.

7.    Defendant Jane Hill Robinson is a resident of the State of Tennessee.

**ANSWER:**

Defendant HORNE admits this allegation.

8.    Defendant Sharon Robinson Horne is a resident of the State of Tennessee.

**ANSWER:**

Defendant HORNE denies this allegation and answering further states that she is a resident of the State of North Carolina.  Answering further, Defendant HORNE states that she is a "beneficiary" within the meaning of section 3(8) of ERISA, 29 U.S.C. § 1002(8).

## FACTUAL BACKGROUND

9.    The Fund provides, amongst other benefits, an Accidental Death and Dismemberment Benefit ("AD & DB") payable pursuant to the terms of the Plan to the beneficiary of a Covered Participant.

**ANSWER:**

Defendant HORNE admits this allegation.

10.    Robert M. Johnson was a Covered Participant in the Fund as a result of his employment pursuant to a collective bargaining agreement negotiated between his employer and an affiliate of the International Brotherhood of Teamsters.

**ANSWER:**

Defendant HORNE admits this allegation.

11.    As a Covered Participant in the Fund, Robert M. Johnson was covered by the Plan's AD & DB which paid, upon his accidental death, $40,000 to his proper beneficiary.

**ANSWER:**

Defendant HORNE admits this allegation and answering further states that she is the only proper beneficiary for all accidental death benefits remaining due from Robert M. Johnson's AD & DB with the Plan.

12.    Article XIV, § 14.09 of the Plan states that it is the responsibility of each Covered Participant to supply the Fund with a properly executed enrollment or request for change of beneficiary card designating the beneficiary of any Plan life insurance benefit -- including the AD & DB.

**ANSWER:**

Defendant HORNE admits this allegation.

13.    Article XIV, § 14.09 of the Plan states that if a Covered Participant fails to execute a proper beneficiary card, then, at the Covered Participant's death, benefits will be payable to the first surviving class, as follows: (1) Covered Participant's Spouse; (2) Covered Participant's children, in equal shares; (3) Covered Participant's parents, in equal shares; (4) Covered Participant's siblings, in equal shares; and (5) Covered Participant's estate.

**ANSWER:**

Defendant HORNE admits these allegations and answering further states that Robert M. Johnson, the Covered Participant, executed and supplied the Fund with a proper beneficiary card designating her as his beneficiary.

14.    In April of 2006, Robert M. Johnson and his spouse, Jane Hill Johnson, filed a petition for divorce in a Tennessee state court.

**ANSWER:**

Defendant HORNE admits this allegation.

15.    When the divorce petition was filed, an automatic injunction was entered under Tennessee state law which prohibited Robert M. Johnson from transferring or assigning any assets.  To the extent his spouse was the designated beneficiary of any insurance, the injunction prevented Robert M. Johnson from changing his beneficiary designation.

**ANSWER:**

Defendant HORNE admits that when the divorce petition was filed, a legislatively mandated temporary injunction was automatically entered by the Tennessee court prohibiting Robert M. Johnson and Defendant Jane Hill Johnson from transferring or assigning any assets.  *See* Exhibit A.  Answering further, Defendant HORNE denies that the automatic temporary injunction prohibited Robert M. Johnson from changing his beneficiary designation with respect to employee welfare benefit plan assets governed by ERISA, because it was not a Qualified Domestic Relations Order (QDRO) and therefore was pre-empted by ERISA.  29 U.S.C. §§ 1144(a), (b)(7) and (c)(1); *Boggs v. Boggs*, 520 U.S. 833, 846-47 (1997) (Unlike QDROs, domestic relations orders in general are not exempt from ERISA's general pre-emption clause, 29 U.S.C. § 1144(b)(7).).

16.    Prior to the filing of the Johnson's divorce petition, there was no beneficiary card on file with the Fund for Robert M. Johnson's life insurance benefits.  Accordingly, under Art. XIV, § 14.09 of the Plan, Robert M. Johnson's spouse, Jane Hill

Johnson, was entitled to any benefits that were payable as a result of Robert M. Johnson's death.

**ANSWER:**

Defendant HORNE admits this allegation.

17.    While the divorce proceedings were on-going, Robert M. Johnson signed a beneficiary card on January 3, 2007, which listed his girlfriend, Sharon Robinson Horne, as the primary beneficiary of his life insurance benefits from the Fund.

**ANSWER:**

Defendant HORNE admits this allegation and further answers that this voluntary act of Covered Participant Robert M. Johnson made her the "beneficiary" of his AD & DB benefits under the terms of the Plan and within the meaning of 29 U.S.C. § 1002(8).

18.    On June 17, 2007, Robert M. Johnson died from an alleged tractor accident.  As a result, the Johnsons' divorce was never finalized.  Therefore, at the time of his death, Robert M. Johnson was still married to Jane Hill Johnson.

**ANSWER:**

Defendant HORNE admits these allegations.

19.    At the time of Robert M. Johnson's death, Sharon Robinson Horne was still listed as Robert M. Johnson's primary beneficiary on the beneficiary card on file with the Fund.

**ANSWER:**

Defendant HORNE admits this allegation.

20.    Jane Hill Johnson has submitted a claim to the Fund applying for the AD & DB that is payable as a result of Robert M. Johnson's death.

**ANSWER:**

Defendant HORNE admits this allegation, but answering further states that Jane Hill Johnson's alleged claim is not valid and that Defendant HORNE is entitled to Robert M. Johnson's AD & DB benefits as his designated beneficiary with the Fund.

21.    Jane Hill Johnson contends that the injunction that was entered in the Johnson's divorce proceeding prohibited Robert M. Johnson from changing his beneficiary designation to Sharon Robinson Horne.  As a result, Jane Hill Johnson asserts that she should be deemed the primary beneficiary of Robert M. Johnson's life insurance benefits from the Fund.

**ANSWER:**

Defendant HORNE admits this allegation, but answering further states that Jane Hill Johnson's alleged assertions are not valid, in that the Fund permitted Robert M. Johnson to name Defendant HORNE as his designated beneficiary and no QDRO existed to forbid it.  Accordingly, Defendant HORNE is entitled to Robert M. Johnson's AD & DB benefits as his designated beneficiary.

## CLAIM FOR RELIEF

22.    The Fund is in doubt as to whether Jane Hill Johnson or Sharon Robinson Horne is entitled to the $40,000.00 AD & DB.

**ANSWER:**

Defendant HORNE admits this allegation.

23.    The injunction that was entered in the Johnson's divorce proceeding did not meet the requirements of a Qualified Domestic Relations Order ("QDRO") as set forth in section 206(d)(3) of ERISA, 29 U.S.C. § 1056(d)(3).

**ANSWER:**

Defendant HORNE admits this allegation.

24.     Until recently, the law was clear that a state court decree purporting to affect the benefits payable from an ERISA plan was preempted unless the state court order was a QDRO.  29 U.S.C. § 1144(b)(7); *see also Central States, Se. & Sw. Areas Health and Welfare Fund v. Howell*, 227 F.3d 672 (6th Cir. 2000).

**ANSWER:**

Defendant HORNE admits this allegation and believes that it still states the law applicable to this case.

25.     On February 19, 2008, the U.S. Supreme Court granted a petition for writ of certiorari to decide a QDRO dispute raised in *Kennedy v. Plan Administrator for DuPont Savings and Investment Plan*, 497 F.3d 426 (5th Cir. 2007).   The Supreme Court's decision in *Kennedy* will probably have an impact in determining who should be deemed the primary beneficiary of Robert M. Johnson's life insurance benefits from the Fund.

**ANSWER:**

Defendant HORNE admits the allegation in the first sentence but denies the remaining allegation in that the writ of certiorari granted in *Kennedy* is limited to the following question (Question 3) presented by the petition: "Was the Fifth Circuit correct in concluding that ERISA's Qualified Domestic Relations Order provision, 29 U.S.C. § 1056(d)(3)(B)(i), is the only way a divorcing spouse can waive her right to receive her ex-husband's pension benefits under ERISA?"  *Kennedy v. Plan Administrator for DuPont Savings and Investment Plan*, ___ U.S. ___, 128 S.Ct. 1225, 170 L.Ed.2d 57

(Feb. 19, 2008); 2007 WL 3410239 (November 13, 2007).  Since the instant case involves neither a divorce decree nor a QDRO, proper resolution of Defendant HORNE's rights should not be delayed pending the Supreme Court's consideration and determination of *Kennedy*.

26.     The Fund seeks to avoid paying the benefit to the wrong beneficiary and to avoid making a duplicate payment.

**ANSWER:**

Defendant HORNE admits this allegation.

27.     As a consequence, the Fund stands ready to deposit $40,000.00 with the Court and requests, upon a deposit of the money, that the Fund be discharged from all liability in the premises.

**ANSWER:**

Defendant HORNE neither admits nor denies this allegation and demands strict proof thereof, in that, upon information and belief, she is uncertain whether the Plaintiffs are liable to her for benefits in addition to the sum of $40,000.00.

WHEREFORE, Defendant SHARON ROBINSON HORNE prays that this Court enter an order adjudging:

A.     That she is the proper person to receive all AD & DB benefits payable by the Fund as a result of the death of Covered Participant Robert M. Johnson.

B.     That any money placed on deposit by the Fund to cover the AD & DB benefits due her in this case be placed in an account paying interest at a fair and proper rate, and that said interest also be paid to her.

C.     That the Fund not be discharged from all liability in this case unless and until it pays in an amount sufficient to cover all the AD & DB benefits due her in this case to the custodian designated by the Court.

D.     That the Plaintiffs' request to recover their costs and fees of bringing this action be denied as having been incurred in the ordinary and normal course of conducting the Fund's business.

E.     That Defendant HORNE be awarded such other relief as the Court may deem fair, just and appropriate, and recover her costs and fees in responding to and pursuing this action.

Respectfully submitted,

SHARON ROBINSON HORNE


By:   /s/ Mark J. Vogel
        Mark J. Vogel (ARDC # 3129207)
        One of her Attorneys

Mark J. Vogel
Kenneth F. Theisen
Tews, Theisen & Theisen
One North LaSalle
Suite 3000
Chicago, IL  60602
(312) 782-7320
Attorney I.D. #09912
mjvogel@ameritech.net

## NOTICE OF AN AUTOMATIC INJUNCTION

The following must be attached to each summons in every divorce case filed.

2001 Tennessee House Bill No. 1136, Tennessee 102nd General Assembly (FULL TEXT - STATE NET)

Same as 2001 TN S. B. 539(SN)

TENNESSEE BILL TEXT

SENATE BILL 539
        By Cogen
HOUSE BILL 1136
        By McMilan

VERSION:  Introduced
February 8, 2001
McMilan

AN ACT to amend Tennessee Code Annotated, Section 36-4-106, relative to contents of petition for divorce and legal separation.

TEXT:

BE IT ENACTED BY THE GENERAL ASSEMBLY OF THE STATE OF TENNESSEE:

SECTION 1:   Tennessee Code Annotated, Section 36-4-106, is amended by adding the following as a new subsection (d):

    (d)   Upon the filing of a petition for divorce or legal separation and upon personal service of the complaint and summons on the respondent or upon waiver and acceptance of service by the respondent or upon the filing of a petition for divorce upon the grounds of irreconcilable differences and the transmission of a copy to the other party even if the complaint is not served, the following temporary injunctions shall be in effect against both parties until the final decree of divorce or order of legal separation is entered, the petition is dismissed or the parties reach agreement:

    (1)(A)  An injunction restraining and enjoining both parties from transferring, assigning, borrowing against, concealing or in

FILED
AT 11:30  O'CLOCK A  M
JUL 1 1 2001

EXHIBIT A

any way dissipating or disposing, without the consent of the other party or any order of the court, of any property.

(b)   Expenditures from current income to maintain the marital standard of living and the usual and ordinary costs of operating a business are not restricted by this injunction. Each party shall maintain record of all expenditure, copies of all which shall be available to the other party upon request.

(2)   An injunction restraining and enjoining both parties from voluntarily canceling, modifying, terminating, assigning or allowing to lapse for nonpayment of premiums, any insurance policy, including, but not limited to, life, health, disability, homeowners, renters and automobile, where such insurance policy provides coverage to either of the parties or the children, or that names either of the parties or the children as beneficiaries without the consent of the other party or an order of the court. "Modifying" includes any change in beneficiary status.

(3)   An injunction restraining both parties from harassing, threatening, assaulting or abusing the other and from making disparaging remarks about the other to or in the presence of any children of the parties or to either party's employer.

(4)   An injunction restraining both parties from removing any children of the parties from the State of Tennessee without the permission of the other or an order of the court.  The provisions of Section 36-6-101(a)(3) shall be applicable on fulfillment of the requirements of subsection (d) of this act.

(5)   The provisions of these injunctions shall be attached to the summons and the complaint and shall be served with the complaint.   The injunctions shall become an order of the court upon fulfillment of the requirements of subsection

(d)   of this act.   However, nothing in this subsection shall preclude either party from applying to the court for further temporary orders, an expanded temporary injunction or modification or revocation of this temporary injunction.

SECTION 2.   This act shall take effect upon becoming law, the public welfare requiring it.

2001 TN H.B. 1136(SN)
END OF DOCUMENT

EXHIBIT A