**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CENTRAL STATES, SOUTHEAST | ) | |
| AND SOUTHWEST AREAS HEALTH | ) | |
| AND WELFARE FUND, and | ) | |
| HOWARD MCDOUGALL, Trustee, | ) | |
| | ) | No.   08 CV 2476 |
| Plaintiffs, | ) | JUDGE CASTILLO |
| | ) | MAGISTRATE JUDGE KEYS |
| v. | ) | |
| | ) | |
| JANE HILL JOHNSON and | ) | |
| SHARON ROBINSON HORNE, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT HORNE'S RESPONSE TO**
**DEFENDANT JOHNSON'S TRANSFER MOTION**

Defendant SHARON ROBINSON HORNE, hereinafter "Defendant Horne," by her attorneys, TEWS, THEISEN & THEISEN, in response to Defendant Jane Hill Johnson's Motion To Transfer This Case To United States District Court For The Eastern District Of Tennessee, states as follows:

1.     This action for interpleader was brought by the Central States, Southeast and Southwest Areas Health and Welfare Fund, hereinafter "the Plan," and Howard McDougall, Trustee, hereinafter "Plaintiffs," to determine which of the defendants is entitled to a $40,000 Accidental Death and Dismemberment Benefit ("AD & DB"). The Complaint was brought under Federal Rule of Civil Procedure 22(1), invoking the Court's subject-matter jurisdiction based on a federal question under Section 502(a)(3) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(3). *Commercial Nat. Bank of Chicago v. Demos*, 18 F.3d 485, 488 (7th Cir. 1994); *Gelfren v. Republic Nat. Life Ins. Co.*, 680 F.2d 79 (9th Cir. 1982).

2.      As the Complaint alleges, this Court has jurisdiction under Section 502(e)(1) of ERISA, 29 U.S.C. § 1132(e)(1), and venue is based on Section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2), which provides that such actions may be brought "in the district where the Plan is administered, where the breach took place, or where a defendant resides or may be found." Here, the Northern District of Illinois is the district wherein the Plan is administered at its principal place of business in Rosemont, Illinois. Complaint, ¶ 3. *See Sprinzen v. Supreme Court of New Jersey*, 478 F.Supp. 722 (S.D.N.Y. 1979) (an employee benefit plan is administered where the plan's offices are located, where its affairs are conducted, where its trustees meet, and where its records are kept).

3.      Defendant Horne and Defendant Jane Hill Johnson, hereinafter "Defendant Johnson," have each admitted this Court's jurisdiction and venue in their answers to the Complaint. Defendant Horne Answer, ¶¶ 2 & 3; Defendant Johnson Answer, ¶¶ 2 & 3. However, Defendant Johnson further contends that "proper venue also lies in the United States District Court for the Eastern District of Tennessee at Greeneville, Tennessee…" Defendant Johnson Answer, ¶3. Defendant Horne disputes this, in that, contrary to Defendant Johnson's mistaken allegations at Paragraph 2 of her Answer and Paragraph 2 of her Motion, Defendant Horne resides in North Carolina and has resided there prior to the filing of the Complaint in this case. *See* Defendant Horne Answer, ¶ 8.

4.      Motions to transfer venue are made pursuant to 28 U.S.C. § 1404(a), which provides that, "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where

it might have been brought."  28 U.S.C. § 1404(a); *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 (7th Cir. 1986).  To prevail on a motion to transfer under § 1404(a), the moving party must demonstrate that: "(1) venue is proper in the transferor district; (2) the transferee district is one where the action might have been brought (both venue and jurisdiction are proper); and (3) the transfer will serve the convenience of the parties and witnesses and will serve the interest of justice."  *Von Holdt v. Husky Injection Molding Systems, Ltd.*, 887 F.Supp. 185, 188 (N.D. Ill. 1995).  As already indicated, both defendants concede the propriety of venue in the transferor district.  However, Defendant Johnson has not demonstrated the second and third elements of this test, and it is her burden to do so.  *Coffey, supra*, 796 F.2d at 219-20 (movant has the burden of showing that "the transferee forum is clearly more convenient."); *Von Holdt, supra*, 887 F.Supp. at 188.

5.      Defendant Johnson has not demonstrated that venue is proper in the proposed transferee court.  "[T]he power of a district court under § 1404(a) to transfer an action to another district is made to depend not upon the wish or waiver of the defendant but, rather, upon whether the transferee district was one in which the action might have been brought by the plaintiff."  *Hoffman v. Blaski*, 363 U.S. 335, 343-44 (1960); *Prudential Insurance Company of America v. Rodano*, 493 F.Supp. 954, 955 (E.D. Pa. 1980) (transferee district must be one in which the case might have been originally instituted).  Defendant Johnson has not demonstrated that the Complaint could initially have been filed in the Eastern District of Tennessee, because the Plan is not administered there, a fact which Defendant Johnson has admitted in Paragraph 2 of her Answer, no breach of fiduciary duty occurred there, and Defendant Horne does not reside there or

have sufficient contacts to "be found" there.[1] *See* 29 U.S.C. § 1132(e)(2); *Boyer v. J.A. Majors Company Employees' Profit Sharing Plan,* 481 F.Supp. 454, 459 (N.D. Ga. 1979). Although § 1132(e)(2)'s service of process clause creates nationwide jurisdiction, it does not create nationwide venue. *Waeltz v. Delta Pilots Retirement Plan*, 301 F.3d 804, 808-10 (7th Cir. 2002). Instead, a defendant resides or "may be found," for ERISA venue purposes, in any district in which the defendant's "minimum contacts" would support the exercise of personal jurisdiction. *Id.*; *Strickland v. Trion Group, Inc.*, 463 F.Supp.2d 921, 927 (E.D. Wis. 2006) ("[I]f I construed 'resides' to authorize nationwide venue, I would effectively render superfluous the *Waeltz* court's conclusion that 'may be found' does not permit such venue."); *Laurent v. PriceWaterhouseCoopers LLP*, 2005 WL 1221304, *2 (S.D., Ill. 2005) (Although the ERISA venue provision is broad, it is not unlimited, and *Waeltz* does not support an interpretation that "resides" equals personal jurisdiction.).

6.    Specifically, Defendant Johnson has not shown that Defendant Horne's "minimum contacts" with the Eastern District of Tennessee on or after April 30, 2008, the date of the Complaint in this case, "would support the exercise of personal jurisdiction under the rule of *International Shoe Co. v. Washington*, 326 U.S. 310 (1945)." *Waeltz*, *supra*, 301 F.3d at 810; *Wild v. Subscription Plus, Inc.*, 292 F.3d 526, 528 (7th Cir. 2002) ("jurisdiction is normally determined as of the date of the filing of the suit"); *Moore v. Rohm & Haas Co.*, 446 F.3d 643, 646 (6th Cir. 2006). In Paragraph 6 of

---

[1]    Although Defendant Johnson herself resides in the Eastern District of Tennessee, where there is more than one defendant, venue under 29 U.S.C. § 1132(e)(2) must be proper as to both. *Strickland v. Trion Group, Inc.*, 463 F.Supp.2d 921, 925-27 (E.D. Wis. 2006); *Board of Trustees v. Sullivant Avenue Properties, LLC*, 508 F.Supp. 2d 473, 477 (E.D. Va. 2007) ("ERISA's venue provision, 29 U.S.C. § 1132(e)(2) provides for venue where the Defendants reside - in this case within the proposed transferee forum.").

her Motion, Defendant Johnson alleges that Defendant Horne was named as a defendant in a 2007 civil action brought by her in the Probate Court for Greene County at Greeneville, Tennessee, concerning the right to payment of the $40,000 AD & DB from the Plan, which was not named as a party. Defendant Horne resided in Mosheim, Tennessee, at that time. The parties settled part of this lawsuit and an Agreed Order was entered in that regard in September 2007. *See* Exhibit A to this Response. As already noted, Defendant Horne now resides in North Carolina, *see* Defendant Horne's Answer to Complaint, ¶ 8, and has resided there since late 2007. Defendant Johnson has neither alleged nor shown any additional contact by Defendant Horne with Tennessee since she moved to North Carolina. Therefore, unless this Court determines that Defendant Horne's prior residence and status as a defendant in a pending lawsuit in Tennessee probate court are sufficient minimum contacts with the Eastern District of Tennessee, Defendant Johnson has not shown that Defendant Horne "may be found" in that district under § 1132(e)(2), or that it is a proper transferee district under § 1404(a).

7.    Regardless of whether the Eastern District of Tennessee is a proper transferee district under §1404(a), Defendant Johnson has not demonstrated that the requested venue transfer will serve the convenience of the parties and any witnesses and will serve the interest of justice. *Von Holdt*, *supra*, 887 F.Supp. at 188. In evaluating the convenience and fairness of transfer under § 1404(a), a court must consider both the private interests of the parties and the public interest of the court. *Id.* Private interests include: (1) plaintiff's choice of forum, (2) the situs of material events, (3) the relative ease of access to sources of proof in each forum including the court's power to compel the appearance of unwilling witnesses at trial and the costs of obtaining the attendance of

witnesses, (4) convenience to the parties - specifically, their respective residences and abilities to bear the expense of trial in a particular forum. *Id.* Public interest factors include the court's familiarity with applicable law and the desirability of resolving controversies in their locale. *Id.*

8.      Defendant Johnson has only addressed some of these factors, and the ones she has addressed are unsupported legally or factually.

### (1) Plaintiff's Choice of Forum

Defendant Johnson has not addressed the significance of Plaintiffs' choice of forum. However, since this is an interpleader action in which the Plaintiffs have been discharged, their choice of forum is probably a neutral factor. *See, e.g., Mutual of Omaha Insurance Company v. Dolby*, 531 F.Supp. 511, 514 (E.D. Pa. 1982) ("[T]he presumption [in favor of choice of forum] is inapplicable in an interpleader action if the party or parties that initiated the action are discharged prior to trial.").

### (2) Situs of Material Events

Defendant Johnson states in Paragraph 2 of her Answer that "the only connection the Northern District of Illinois has with this case is that the fund is administered there and the principal office of Plaintiffs is located there." However, this case grows out of the Plan's administration, and will largely focus on the legal significance of Plan documents. Construction of the terms of the Plan's AD & DB and its beneficiary designation terms under ERISA, will be an important question of law for this Court. *See Filipowicz v. American Stores Benefit Plans Committee*, 56 F.3d 807, 812 (7th Cir. 1995) (In determining whether an employee is entitled to benefits under an insurance policy, a court must look to the terms of that policy as a preliminary question of law.); *AON*

*Corporation Accidental Death and Dismemberment Plan v. Hohlweck*, 223 F.Supp.2d 510, 514 (S.D.N.Y. 2002) (In determining an ERISA beneficiary, the court must look first to the plan document itself; if the plan document is clear, that ends the matter.); *Kitchen v. North American Accident Insurance Company*, 2 Ill.App.2d 23, 26, 118 N.E.2d 48 (3d Dist. 1954) ("It is a well established rule that the right of an insured to change beneficiaries under an insurance policy is dependent upon the terms of such policy.").

In Paragraphs 4, 5 and 6 of her Motion, Defendant Johnson alleges her divorce action pending in the Greenville, Tennessee Chancery Court at the time of Robert M. Johnson's death, Robert M. Johnson's accidental death in Greene County, Tennessee on June 17, 2007, and the administration of Robert M. Johnson's estate together with a civil action in the Probate Court for Greene County at Greeneville, Tennessee with respect to the $40,000 AD & DB at issue. Out of all of this, the only relevant fact occurring in the Eastern District of Tennessee was the Tennessee divorce court's entry of the automatic injunction at the outset of Defendant Johnson's divorce action which was never concluded. A copy of the Tennessee order at issue is attached as Exhibit A to Defendant Horne's Answer. Whether that automatic injunction constitutes a Qualified Domestic Relations Order (QDRO) for ERISA pre-emption purposes is the central legal issue that this Court must determine. Under Article XIV, § 14.09 of the Plan, which governs payment of the AD & DB, any payment, whether to Defendant Horne or Defendant Johnson, would pass outside the Estate of Robert M. Johnson. *See* Complaint, ¶¶ 12, 13, 16 & 17. Thus, the pending estate proceedings are irrelevant.

<u>**(3) Access to Evidence & Convenience of Witnesses**</u>

Although Defendant Johnson summarily alleges in Paragraph 7 of her Motion "[t]hat the evidence and witnesses in this case are all present in the United States District Court for the Eastern District of Tennessee at Greeneville, Tennessee," she has not identified any of this evidence nor any of the alleged witnesses or the substance of what they would testify to. Her broad statement is also incorrect in that Defendant Horne is a potential witness and she is not "present" in the Eastern District of Tennessee. Thus, it is impossible for the Court to assess the nature, quality or significance of such alleged evidence and witnesses to the issues in this case. *Hanley v. Omarc*, 6 F.Supp.2d 770, 775-76 (N.D. Ill. 1998); *Von Holdt*, *supra*, 887 F.Supp. at 189; *National Union Fire Insurance Company of Pittsburgh v. Coric*, 924 F.Supp. 373, 379 (N.D. N.Y. 1996). Moreover, Defendant Johnson has not provided any reasons why potential evidence or witnesses would be unavailable or inconvenienced if trial were held in the Northern District of Illinois. *Board of Trustees*, *supra*, 508 F.Supp. 2d at 478 (alleged convenience of witnesses does not weigh in favor of transfer where movant has failed to identify any witnesses or offer any reasons or factual basis as to why witnesses would be unavailable or inconvenienced if trial were held in the transferor district). Although the location of documentary evidence neither militates for nor against transfer, *see, Hanley,* 6 F.Supp. 2d at 775; *Von Holdt*, 887 F.Supp. at 190, as already indicated above, most of the pertinent documents are located where the Plan was administered in the Northern District of Illinois.

Moreover, the material facts are essentially undisputed and there will be little need for witness testimony. As the Complaint alleges in Paragraphs 23 to 25, the central issue in this case is a legal one, that is, whether the automatic injunction of the Tennessee

divorce court referred to in Paragraphs 15, 21 and 23 of the Complaint constituted a QDRO under ERISA. *See* 29 U.S.C. §§ 1144(a), (b)(7) and (c)(1); *Boggs v. Boggs*, 520 U.S. 833, 846-47 (1997) (Unlike QDROs, domestic relations orders in general are not exempt from ERISA's general pre-emption clause, 29 U.S.C. § 1144(b)(7).). If this Court determines that this automatic injunction was not a QDRO under ERISA, its force and effect are pre-empted by ERISA. Thus, there is great potential that this case may be disposed of by summary judgment on the documents with minimal need of witnesses. *Heller Financial, Inc. v. Midwhey Powder Co., Inc.,* 883 F.2d 1286, 1294 (7th Cir. 1989); *AON Corporation Accidental Death and Dismemberment Plan, supra,* 223 F.Supp.2d at 514-17; *Sentry Select Insurance Company v. LBL Skysystems (U.S.A.), Inc.*, 486 F.Supp.2d 496, 506 (E.D. Pa. 2007).

### (4) Convenience of the Parties

Defendant Johnson does not address the convenience to both parties of a transfer to the Eastern District of Tennessee. Why is the Eastern District of Tennesse any more convenient than the district of an appropriate Federal Court in North Carolina, where Defendant Horne resides? Defendant Horne has already retained counsel in the Northern District of Illinois and submitted to this Court's jurisdiction and venue. Requiring Defendant Johnson to do the same, treats each of the defendants equally and fairly. Moreover, as the Seventh Circuit recognized in *Board of Trustees, Sheet Metal Workers' National Pension Fund v. Elite Erectors, Inc.*, 212 F.3d 1031, 1037 (7th Cir. 2000), "Easy air transportation, the rapid transmission of documents, and the abundance of law firms with nationwide practices, make it easy these days for cases to be litigated with little extra burden in any of the major metropolitan areas." This Court has similarly

recognized that, given technological advances, "[I]n to day's modern-day world, litigating a case in a distant forum is not an excessive burden." *Von Holdt, supra,* 887 F.Supp. at 190.

Defendant Johnson's unsupported allegations in Paragraph 2 of her Answer that she is "financially unable to come to Illinois to defend or to hire an attorney to defend in Illinois," fall far short of establishing that a transfer to the Eastern District of Tennessee is required for this reason. *Heller Financial, Inc., supra,* 883 F.2d at 1293 ("[T]he mere inconvenience of having to travel to Chicago to litigate did not require the district court to transfer the case…"); *Chicago, Rock Island and Pacific Railroad Company v. Igoe*, 220 F.2d 299, 304 (7th Cir. 1955) ("We give little weight to the claim that plaintiff will be required to hire an Iowa attorney if the transfer is ordered."); *Board of Trustees*, *supra*, 508 F.Supp. 2d at 478-79 (Defendants "offer no convincing evidence suggesting that they would be financially incapable of defending suit in Virginia."); *National Union Fire Insurance Company of Pittsburgh, supra,* 924 F.Supp. at 379 (unsupported claim of financial hardship affords no meaningful basis for venue transfer).

Moreover, available records suggest that Defendant Johnson may have sufficient available financial resources.   First of all, she received a $28,000 settlement from Defendant Horne out of the initial $40,000 double indemnity payment provided by the Plan.  *See* Exhibit A to this Response.  Secondly, she has retained many of her deceased husband's assets, some of which may have considerable financial value.  *See* Exhibits B & C to this Response.  Since it is likely that this case may be resolved by summary judgment motion, the financial cost of litigation in the Northern District of Illinois should

not be beyond Defendant Johnson's available financial resources.  *Sentry Select Insurance Company, supra,* 486 F.Supp.2d at 506.

Defendant Johnson also fails to address the convenience to Defendant Horne of the requested transfer.  Certainly, Defendant Johnson has not alleged nor demonstrated that she is financially worse off than Defendant Horne.  Moreover, the requested transfer would impose an additional hardship on Defendant Horne, in that she would lose the continuity of retained counsel who is not a member of the Tennessee or Eastern District of Tennessee bars and would not be able to travel with the case if it were transferred.  Thus, where, as in this case, the requested transfer would merely shift the inconvenience from Defendant Johnson to Defendant Horne, it is inappropriate.  *Heller Financial, Inc., supra,* 883 F.2d at 1294; *Hanley, supra*, 6 F.Supp.2d at 776; *Joslyn Manufacturing Co. v. Amerace Corporation*, 729 F.Supp. 1219, 1226 (N.D. Ill. 1990); *Kubin-Nicholson Corp. v. Gillon*, 525 F.Supp.2d 1071, 1075 (E.D. Wis. 2007).

### Public Interest Factors

Defendant Johnson has not addressed any public interest factors other than to suggest that the material events in this case all occurred in the Eastern District of Tennessee.  As noted above with respect to the situs of material events, Defendant Horne disputes this allegation.  "Public interest factors include the court's familiarity with applicable law and the desirability of resolving controversies in their locale."  *Von Holdt, supra,* 887 F.Supp. at 188.  Here, since the case is based on Federal question jurisdiction, it can be safely assumed that this Court is as familiar with ERISA, which governs this dispute, as a judge in the Eastern District of Tennessee.  *See Rodolff v. Provident Life & Accident Insurance Company*, 2001 WL 34083814, *4 (S.D. Cal. 2001) ("The controlling

law is federal law, thereby avoiding any conflict of law."). Moreover, the key issues in this case arise out of the administration of the Plan and will be resolved by the Court's interpretation of Plan documents and its determination of whether the automatic injunction of the Tennessee divorce court constitutes a QDRO under ERISA. Therefore, the Northern District of Illinois may be the most desirable forum for resolving this case. This conclusion is supported by the fact that, since the Plan is based in this district and files many, if not most, of its actions here, retention of the case by the Court would favor a consistent interpretation of ERISA to the Plan. *See Board of Trustees, supra,* 508 F.Supp.2d at 479.

WHEREFORE, since Defendant Johnson has not satisfied her burden of demonstrating that the Eastern District of Tennessee is a proper and clearly more convenient forum under 28 U.S.C. § 1404(a), her motion to transfer the case to that district should be denied.

Respectfully submitted,

SHARON ROBINSON HORNE

By: ___/s/ Mark J. Vogel_____
       Mark J. Vogel (ARDC # 3129207)
       One of her Attorneys

Mark J. Vogel
Kenneth F. Theisen
Tews, Theisen & Theisen
One North LaSalle
Suite 3000
Chicago, IL 60602
(312) 782-7320
Attorney I.D. #09912
mjvogel@ameritech.net

**<u>EXHIBIT A</u>**

## IN THE PROBATE COURT FOR GREENE COUNTY, TENNESSEE, THIRD JUDICIAL DISTRICT, SITTING AT GREENEVILLE

IN THE MATTER OF:
THE ESTATE OF ROBERT MICHAEL JOHNSON,
    Deceased

| | | |
|---|---|---|
| JANE HILL JOHNSON, | } | |
| | } | |
|     **Administratrix and Plaintiff,** | } | |
| | } | |
| **vs.** | } | **CASE NO.  2007P192** |
| | } | |
| SHARON HORNE, | } | |
| | } | |
|     **Defendant.** | } | |

---

### AGREED ORDER

---

    This cause came to be heard on September 24, 2007, before this honorable Court. The undersigned ordered $40,000 to be placed in a constructive trust for the benefit of the Plaintiff. The parties have reached an agreement outside of court regarding the $40,000. On September 26, 2007, counsel for the Defendant gave to the Plaintiff a check made out to Frank Slaughter, Jr., and Jane Hill Johnson in the amount of $28,000. The $28,000 dispersed on September 26, 2007, is in full satisfaction of the $40,000 the undersigned ordered placed in a constructive trust.

    This Agreed Order incorporates by reference the Order being prepared by counsel for the Plaintiff regarding the September 24, 2007, hearing.

LODGED
DATE 9-26-07
TIME 1:25pm

Clerk and Master

In addition, this honorable Court ordered the parties to mediation concerning the year's support issue pled in the Petition. Both parties agree, however, that the Defendant has no standing in the year's support issue and that mediation is not necessary.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED AS FOLLOWS:**

1. The $28,000 received by the Plaintiff and her counsel is in full satisfaction of the undersigned's order to place $40,000 in a constructive trust for the benefit of the Plaintiff.

2. This Agreed Order incorporates by reference the Order to be filed by Plaintiff's counsel regarding the September 24, 2007, hearing.

3. The Defendant has no standing to address the year's support issue.

**ENTER THIS THE _____ DAY OF _____, 2007.**


_____
**CHANCELLOR**

**APPROVED FOR ENTRY:**


Jennifer A. Ashley, Esq.
Attorney for the Defendant
119 East Depot Street
Greeneville, TN  37743
423/639-7255
BPR# 025807

_Frank L. Slaughter, Jr., Esq._

Frank L. Slaughter, Jr., Esq.
Attorney for the Plaintiff
324 6th Street
Bristol, TN 37620
423/844-0560
BPR# 018893

_Jane H. Johnson_

Jane Hill Johnson
Plaintiff

# EXHIBIT B

*Terry Risner*

*Attorney at Law*
*534 West Main Street*
*Mt. Carmel, TN 37645*
**(423) 357-4867**
*Fax (423) 357-7067*

October 27, 2006

Mr. Francis X. Santore, Jr.
Attorney at Law
121 East Depot Street
Greeneville, TN 37744

Re: Johnson vs. Johnson
     Greene County Chancery Court Case No: 20060131

Dear Frank:

Thank you for forwarding the copy of the Johnsons' Marital Dissolution Agreement. I hope that we can move this matter to a satisfactory conclusion.

You should be aware that I met with Mr. Johnson to discuss the issues raised in your letter. He stated that he agrees that any necessary expenses for repairs to the house should be withheld from the sale proceeds.

Regarding the remaining items of personal property, Mr. Johnson advised me as follows:

A.  Most of the steel fence posts were used in building a fence on the property. The remaining posts are still there, stored in a shed.

B.  Similarly, two rolls of wire fencing were used. The remaining roll is stored at the residence.

C.  The "cattle fences" are, Mr. Johnson assumes, cattle gates. They are also in the fields, mounted to posts.

D.  Mr. Johnson doesn't know about the existence of any wooden gates.

E.  The cedar posts were used in the fencing.

**EXHIBIT B**

G-2

F. When Mr. Johnson went to retrieve personal property, he was accompanied by Mr. Kinney, whom I understand is Mrs. Johnson's minister, or similar church official. Mrs. Johnson, in Mr. Kinney's presence, requested that the standing crops be harvested, and that the fields be disked. Mr. Johnson did as asked, giving Mrs. Johnson all of the harvested items. Mrs. Johnson did then give one pumpkin back to Mr. Johnson. Mr. Kinney, also at Mrs. Johnson's request, sowed the fields in grass.

As you can see, we do not accept Mrs. Johnson's representations that Mr. Johnson owes her any money. To the contrary, as set out below. Mrs. Johnson still has possession of substantial numbers of items belonging to Mr. Johnson.

Mr Johnson stated that everything which he removed was taken in the presence of both Mrs. Johnson and Mr. Kinney, with Mrs. Johnson's approval.

Mr. Johnson listed items which he still needs to retrieve. These are:

1. His father's large railroad pocket watch and coins which he had received from his mother.

2. Other items received from his mother:

   a. pie safe
   b. antique table and four chairs
   c. electric butter churn
   d. sausage grinder
   e. sewing machine and cabinet
   f. large oval tub

3. Other items received from his dad:

   a. old records
   b. kerosene stove
   c. pitchfork
   d. large window in trailer from dad

4. Additional farm implements, tools, etc.:

   a. goat wagon
   b. router
   c. vise
   d. two chain saws (for parts)
   e. shop heater
   f. chain binder
   g. 16' ladder (brought into marriage)
   h. bench grinder

**EXHIBIT B**

    i.   remote control for winch
    j.   remaining miscellaneous farm equipment in shed and farm tools
    k.   brass kettle and stirs for apple butter
    l.   shop floor heater blower
    m.   3/4 drive rachet set
    n.   hay in shed
    o.   18' farm wagon
    p.   tag along car hauler
    q.   electric service pole with fixtures
    r.   chicken wire and posts
    s.   farm wood, including logs
    t.   farm gates
    u.   5000 Ford tractor
    v.   72 Ford F-600 truck title
    w.   78 Ford F-100 truck title
    x.   93 Ford flare-side truck title
    y.   Ford 5000 head lights in box
    z.   assorted nails
    aa.   extra stove pipe
    bb.   5000 Ford tractor
    cc.   roll of sheet metal

5.   His Verizon cell phone.

6.   The satelite dish, receiver and direct t.v. that he is paying for.

7.   His mother and father's pictures.

8.   His coats, coveralls and any other personal clothing.

I hope that, after review of our list, your client acknowledges that Mr. Johnson is entitled to retrieve the balance of his items. We trust that Mrs. Johnson will cooperate in the removal of those items. In finishing this phase of the division of personalty, Mr. Johnson also requests a division of the money which your client received from the sale of the carport.

On another note, Mr. Johnson finds that the financial settlement between the parties presents a nonsustainable burden for him. Therefore, he wants to arrange an immediate sale of the home. This is particularly pressing in light of continuing friction between the parties. Apparently, Mrs. Johnson accosted Mr. Johnson while he was on the real estate tract which he is receiving in the divorce and created an unnecessary quarrel with him. I think that, in order to minimize further problems, we should press for a quick sale.

In conjunction with completing this divorce, my client asks that Mrs. Johnson's daughter and boyfriend immediately vacate the home. He believes that they have controlled substances there, and is worried about the possibility of legal repercussions.

We also want to get the parties together to sign off on titles to vehicles.  Because your client is allowing other parties to drive a vehicle titled in our clients' names, we are concerned about the possibility of legal exposure due to any accident which may happen.

We have one other request-that Mrs. Johnson pay her outstanding medical obligations. Mr. Johnson is being harassed by debt collectors, and wants to bring that to an end.

Thank you for your assistance.  I look forward to the early completion of this case.

Sincerely:

Terry Rasper
Attorney At Law

cc: Mr. Robert M. Johnson
TR/cc

EXHIBIT B

**EXHIBIT C**

## IN THE CHANCERY COURT FOR STATE OF TENNESSEE
## 3ᴿᴰ JUDICIAL DISTRICT, AT GREENVILLE

JANE HILL JOHNSON                    *

      Plaintiff,                        *

                             *

vs.                                  *          **Docket No.: 20060131**

                             *

ROBERT MICHAEL JOHNSON               *

      Defendant.                        *

---

## MOTION TO ENFORCE AGREEMENT AND
## FOR ACCOUNTING AND CONTEMPT

---

      Comes now Defendant, Robert Michael Johnson (hereinafter "Movant"), by counsel, and for his motion to enforce the agreement entered into by the parties, would show this honorable Court as follows:

1.    Plaintiff, Jane Hill Johnson (hereinafter "Respondent"), initiated the within action on April 27, 2006 by the filing of her Complaint.

2.    Movant filed his Answer requesting that Defendant be awarded a divorce from Plaintiff and an equitable division of the parties' marital assets and debts.

3.    The parties subsequently mediated the matter, and reached a mutual agreement.

4.    Based upon the mutual agreement, the parties entered into a Marital Dissolution Agreement. A true and complete copy of that Marital Dissolution Agreement is affixed hereto as Exhibit A copy for attachment.

5.    Plaintiff/Respondent ("Respondent") now refuses to abide by terms contained in the Marital Dissolution Agreement.

6.    Among the violations of the Marital Dissolution Agreement, Respondent has refused to surrender to Movant much of the personal property which was identified as Movant's property in the Marital Dissolution Agreement,

---

**EXHIBIT C**

7.  Counsel for Movant forwarded to counsel for Respondent a listing of Movant's items remaining in Respondent's possession. A true copy of that list is affixed hereto as Exhibit B copy for attachment.

8.  Movant reasonably believes that, contrary to law and in breach of the Marital Dissolution Agreement and in violation of the restraining order placed upon the parties with the filing of the within action, Respondent has sold a number of items of Movant's personal property.

**WHEREFORE**, Movant prays as follows:

1.  That Movant be granted the relief which Movant previously requested, including entry of a judgment of divorce from Respondent.

2.  That the parties' Marital Dissolution Agreement be incorporated in the judgment, and that terms of the said Marital Dissolution Agreement be enforced.

3.  That Respondent be required to account for all of Movant's personal property which was not surrendered to Movant and that Respondent be ordered tp immediately surrender all such property to Movant.

4.  That Respondent be held to be in contempt of this honorable Court for her failure to abide by provisions of applicable law, the Court's restraining order and the parties' Marital Dissolution Agreement.

5.  For sanctions to issue against Respondent, including the requirement that Respondent be required to pay Movant's attorney fees incurred in prosecuting this Motion. That, if necessary, sufficient assets of Respondent's be ordered liquidated to pay any assessment against Respondent.

6.  For such other, further relief as may be just and appropriate under the circumstances of this cause.

TERRY RISNER    #015096
Attorney for Defendant
534 West Main Street
Mt. Carmel, TN 37645
(423) 357-4867

## CERTIFICATE OF SERVICE

I hereby certify that I have served a true and complete copy of the foregoing instrument on Mr. Francis X. Santore, Attorney of record for Plaintiff, P.O. Box 113, Greeneville, Tennessee 37744, by ordinary U.S. mail, postage prepaid, this _2044_ day of _Decem ber_____, 2006.

TERRY RISNER

**EXHIBIT C**

## IN THE CHANCERY COURT FOR STATE OF TENNESSEE
## 3ʳᵈ JUDICIAL DISTRICT, AT GREENEVILLE:

JANE HILL JOHNSON         *

     Plaintiff,             *

vs.                    *     Docket No.: 20060131

ROBERT MICHAEL JOHNSON    *

     Defendant.            *

## MARITAL DISSOLUTION AGREEMENT

THIS AGREEMENT, made and entered into by and between Robert Michael Johnson, hereafter referred to as Husband; and Jane Hill Johnson, hereafter referred to as Wife;

### WITNESSETH

WHEREAS, the parties hereto are Husband and Wife; and

WHEREAS, there are no minor children born of this marriage; and

WHEREAS, the parties are in agreement that their marriage is irretrievably broken, stipulated grounds to be the ground in the divorce action instituted in the Chancery Court for Greene County, Tennessee, and the parties have no expectation of resuming their marital relationship; and

WHEREAS, the parties desire to enter into an agreement with regard to their respective rights and obligations arising out of their marital relationship in an amicable and mutually acceptable manner;

NOW THEREFORE, in consideration of the mutual promises, covenants and undertakings hereinafter more fully set forth, and for other good and valuable considerations, the parties agree as follows:

1. ALIMONY, MAINTENANCE and SUPPORT. Husband is to pay Wife $160.00 a week beginning 9/18/06 for three (3) years, to be paid each Monday through the clerk of court of by by money order. Alimony is not insolido and is not subject to modification.

2. PROPERTY DIVISION. Wife shall have as and for her individual property the 1997 Ford Mustang in present condition, 1995 Astro van. 0.9 acre land around her daughter's trailer and 1.0 acre around the old septic system, cut lumber in tool shed, all other items of household personal property, and all items of miscellaneous personal property belonging to Wife. Wife's 1.0 acre shall

**EXHIBIT C**

be bounded by the nearest boundary as set out by a survey. If the parties wish to meet with the surveyor Husband will pay for a constable, and the four of them may meet for that sole purpose, notwithstanding any other court order. Wife shall also get a right-of-way or easement for access to the property awarded herein to her. The remainder of the real property will be sold at court sale by the Clerk and Master. The property in the sale may be sold as a whole or in parcels. From the sale proceeds, the court costs, land taxes and the outstanding mortgage will be paid, and the balance divided between the parties. The refrigerator with ice maker, new electric stove, old Kenmore washer and dryer and dishwasher are to stay with the house to be sold. Husband shall have as and for his individual property 1.07 acre land, all of the farm machinery and equipment, all tools, auto equipment and all other tools in garage plus mitre saw, push mower, Troy-built rear drive larger tiller, push mower, large tiller, 1993 Ford flarer side pickup, 1978 Ford F-100, 1972 Ford F-600, 1979 Ford 4-wheel drive pickup his personal items, clothes and items from his parents. Any ownership interest for the property, real or personal, being surrendered by a party herein is hereby fully divested from such party and vested in the other party.

3.  DEBTS Husband shall be responsible for debt owing on the 1997 Ford Mustang, plus all other joint debts, holding Wife harmless therefrom. Each party shall be solely responsible for payment of any of any debts in his/her sole name, and shall hold the other party harmless therefrom.

4.  RETIREMENT PLANS. Neither of the parties shall claim any interest in any retirement funds, plans or individual retirement savings of the other party. Wife is hereby divested of all of her interest in Husband's retirement, the interest being vested in Husband.

5.  The parties understand and agree that this Marital Dissolution Agreement is entered into without any undue influence, fraud, coercion or misrepresentation, and not for any reason not herein stated.

IN WITNESS WHEREOF, Wife has signed this Marital Dissolution Agreement on this  11  day of ____OCtober____, 2006. Husband has signed this Marital Dissolution Agreement on this _18th_ day of _September_____, 2006.

_Jane H. Johnson_
JANE HILL JOHNSON

_Robert M. Johnson_
ROBERT MICHAEL JOHNSON

**EXHIBIT C**

**STATE OF TENNESSEE}**
**COUNTY OF HAWKINS}**

SUBSCRIBED AND SWORN to before me by Jane Hill Johnson my on this _____

day of _____ OCTOBER _____ . 2006.

NOTARY PUBLIC

My commission expires: 11/29/07

**STATE OF TENNESSEE}**
**COUNTY OF HAWKINS}**

SUBSCRIBED AND SWORN to before me by Robert Michael Johnson my on this 18th

day of September _____ . 2006.

Cynthia Cross
NOTARY PUBLIC

My commission expires: May 25, 2010



**EXHIBIT C**

1. His father's large railroad pocket watch and coins which he had received from his mother.

2. Other items received from his mother:

   a. pie safe
   b. antique table and four chairs
   c. electric butter churn
   d. sausage grinder
   e. sewing machine and cabinet
   f. large oval tub

3. Other items received from his dad:

   a. old records
   b. kerosene stove
   c. pitchfork
   d. large window in trailer from dad

4. Additional farm implements, tools, etc.:

   a. goat wagon
   b. router
   c. vise
   d. two chain saws (for parts)
   e. shop heater
   f. chain binder
   g. 16' ladder (brought into marriage)
   h. bench grinder

   i. remote control for winch
   j. remaining miscellaneous farm equipment in shed and farm tools
   k. brass kettle and stirs for apple butter
   l. shop floor heater blower
   m. 3/4 drive rachet set
   n. hay in shed
   o. 18' farm wagon
   p. tag along car hauler
   q. electric service pole with fixtures
   r. chicken wire and posts
   s. farm wood, including logs
   t. farm gates
   u. 5000 Ford tractor
   v. 72 Ford F-600 truck title
   w. 78 Ford F-100 truck title
   x. 93 Ford flare-side truck title
   y. Ford 5000 head lights in box
   z. assorted nails
   aa. extra stove pipe
   bb. 5000 Ford tractor
   cc. roll of sheet metal

5. His Verizon cell phone.

6. The satelite dish, receiver and direct t.v. that he is paying for.

7. His mother and father's pictures.

8. His coats, coveralls and any other personal clothing.

**EXHIBIT C**

<u>**CERTIFICATE OF SERVICE**</u>

I, Mark J. Vogel, one of the attorneys for Defendant Sharon Robinson Horne, certify that on June 23, 2008, I electronically filed the foregoing document entitled Defendant Horne's Response to Defendant Johnson's Transfer Motion with the Clerk of the Court using the ECF system which will send notification of such filing to all parties of record with that system.

I further certify that a copy of the foregoing document was mailed on June 23, 2008, via the U.S. Postal Service, to:

Jane Hill Johnson
66 Redwood Lane
Mosheim, Tennessee  37818.

/s/ Mark J. Vogel
Mark J. Vogel (ARDC # 3129207)
Attorney for Sharon Robinson Horne

Mark J. Vogel
Kenneth F. Theisen
Tews, Theisen & Theisen
One North LaSalle
Suite 3000
Chicago, IL  60602
(312) 782-7320
Attorney I.D. #09912
**mjvogel@ameritech.net**